UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RAMONA L. HEATH,

                    Plaintiff,

-vs-                                        Case No.  6:04-cv-764-Orl-JGG

JO ANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant.

_____

## MEMORANDUM OF DECISION

Plaintiff Ramona L. Heath ["Heath"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for a period of disability, disability insurance benefits, and supplemental security income.  *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

On August 20, 2001, Heath filed claims for disability insurance benefits and supplemental security income, claiming disability as of March 2, 2000.  R. 56-58, 221-23.  On January 28, 2003, the Honorable Philemina M. Jones, Administrative Law Judge ["ALJ"], held a hearing on Heath's claim in Orlando, Florida.  Heath testified, and her non-attorney representative, Mark Gomez, appeared with her at the hearing.  The ALJ also heard testimony from Vocational Expert ["VE"] Jennifer Matthews.  R. 238-66.

On May 7, 2003, the ALJ ruled that Heath was not entitled to benefits.  R. 17-25.  Following a review of the medical and other record evidence, the ALJ found that although Heath had severe

impairments, she did not have an impairment or combination of impairments that met or equaled a listed impairment. R. 24, Findings 3-4. The ALJ also found that Heath's allegations regarding her limitations were not fully credible. R. 24, Finding 5. Further, the ALJ determined that Heath could not perform her past relevant work, but retained the Residual Functional Capacity ["RFC"] to perform a full range of light work.[1] R. 24, Findings 7-8, 12. Accordingly, the ALJ applied Medical-Vocational Guidelines ["Grids"] Rules 202.17 through 202.19 as a framework for decision-making, together with VE testimony, and determined that Heath was not disabled. R. 264 Findings 13-14.

Heath timely appealed the ALJ's decision to the Appeals Council. R. 12. Finding no error or abuse of discretion, the Appeals Council denied review on March 26, 2004. R. 6-8. On May 20, 2004, Heath timely appealed the Appeals Council's decision to the United States District Court for the Middle District of Florida. Docket No. 1. On November 17, 2004, Heath filed a memorandum of law in support of her appeal of the denial of review. Docket No. 16. On January 18, 2005, the Commissioner filed a memorandum in support of her decision that Heath was not disabled. Docket No. 19. The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Heath assigns five errors to the Commissioner: 1.) improperly according greater weight to the opinions of state agency physicians instead of an examining physician; 2.) posing to the VE hypothetical questions that were not supported by substantial evidence; 3.) improperly evaluating

---

[1] "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. If someone can do light work, the Commissioner determines that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

Heath's subjective complaints; 4.) failing to develop the record concerning Heath's knee pain; and 5.) failing to consider Heath's impairments in combination.  Pl.'s Brief at 7-15.

The Commissioner responds that her decision was supported by substantial evidence and was decided by proper legal standards.  The Commissioner asserts that: 1.) the ALJ properly accorded weight among Heath's physicians; 2.) substantial evidence supported the hypothetical questions; 3.) the ALJ properly evaluated Heath's subjective complaints; 4.) a consultative examination concerning Heath's knee pain was not warranted; and 5.) the ALJ properly considered Heath's impairments in combination.  Def.'s Brief at 6-9.

## III.   **THE STANDARD OF REVIEW**

### A.   **Affirmance**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

### B.   Reversal and Remand

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405 (g)(Sentence Four).  The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of  42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences.  *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial

evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405 (g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.  *Jackson*, 99 F.3d at 1095.  With a sentence-six remand, the parties must return to the district court after remand to filemodified findings of fact.  *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  *Id*.

**C.   Standard of Review for Evidence Evaluated by Appeals Council**

After the ALJ's decision — but before the Appeals Council's decision — Heath submitted additional medical records from Dr. Valencia.  R. 234-37.  The Appeals Council properly made them a part of the record, and also considered them in denying review.  R. 9.  The district court also must consider the new evidence in determining whether the Commissioner erred in denying review of the ALJ's decision.

Congress left the term "final decision" undefined in 42 U.S.C. § 405 (g).  Where a claimant exhausts his administrative remedies by requesting review by the Appeals Council and the Appeals Council then denies review,  the Appeals Council's order denying review is a "final decision" of the

Commissioner under § 405 (g).  *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2083 (2000); *accord Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Appeals Council "will" review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence.  20 C.F.R. § 416.1470; *Sims*, 120 S.Ct. at 2086; *see also, Parker v. Bowen*, 788 F.2d 1512, 1518 (11th Cir. 1986) (en banc).  The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. *Sims*, 120 S.Ct. at 2086.

Just as the ALJ has a duty to investigate the facts and to develop the arguments both for and against the granting of benefits, the Appeals Council's review is similarly broad.  *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2085 (2000).  The Appeals Council, not the claimant, has the primary responsibility for identifying and developing the issues.  *Sims*, 120 S.Ct. at 2086.  When the Appeals Council refuses to consider new evidence submitted to it and denies review, the Appeals Council's decision denying review is subject to judicial review.  20 C.F.R. § § 404.970 (b); 416.1470 (b); *Sims*, 120 S.Ct. at 2086;  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Furthermore, the Appeals Council commits reversible error when it refuses to consider new evidence and then denies review.  *Keeton*, 21 F.3d at 1066.  Similarly, it is *reversible error* for a district court to consider only the evidence presented to the ALJ — and to ignore the new evidence presented to the Appeals Council — in reviewing a decision of the Appeals Council.  *Keeton*, 21 F.3d at 1066.

The Appeals Council must consider and evaluate new evidence to determine whether there is a basis for changing the ALJ's decision.  *Sims*, 120 S.Ct. at 2086; *Falge v. Apfel*, 150 F.3d 1320, 1322

n. 4 (11th Cir. 1998).  When the Appeals Council has denied review, the district court looks only to the evidence actually presented to the ALJ in determining whether the *ALJ's decision* is supported by substantial evidence.  *Falge*, 150 F.3d at 1323; *accord, Eads v. Secretary of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993) (ALJ cannot be faulted for failure to weigh evidence never presented to him).

Nevertheless, there is an important difference between *Falge* and this case — a difference stressed by the United States Court of Appeals for the Eleventh Circuit.  In *Falge*, the claimant did not appeal the Appeals Council's decision to deny review.  Instead he appealed only the *ALJ's decision* to deny benefits.  150 F.3d at 1324.  In this case, however, the claimant does expressly appeal and seek a reversal of the Appeals Council's decision to deny review.  Docket No. 1 at 1, ¶ 2.  The Eleventh Circuit directs the district courts to consider evidence submitted to the Appeals Council (if any) in reviewing the Appeals Council's denial of review.  *Falge*, 150 F.3d at 1324; *Keeton*, 21 F.3d at 1066.

Indeed, it makes sense that Congress has provided for judicial review of the Commissioner's final decision — the last step of review necessary to exhaust administrative remedies.  When the Appeals Council refuses to consider new evidence submitted to it, the Appeals Council's decision denying review is subject to judicial review for error.  *Sims*, 120 S.Ct. at 2086; *Keeton*, 21 F.3d at 1066.  Similarly, when the Appeals Council denies review of an ALJ's decision after receiving, considering, and evaluating new and material evidence that clearly and thoroughly undermines the ALJ's findings of fact and conclusions of law, the Appeals Council's decision denying review also must be subject to judicial review for error.  *See Falge*, 150 F.3d at 1324;  *Keeton*, 21 F.3d at 1066, 1068; 20 C.F.R. § 404.970 (b) (Appeals Council shall evaluate the entire record including the new and

material evidence submitted if it relates to the relevant period, and it will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record).  The Commissioner cannot avoid judicial review of the Appeals Council's decision to deny review by considering but not acting on new evidence that is highly probative of disability, or by considering but not acting on evidence that shows in retrospect that an ALJ's action, findings, or conclusion are contrary to the weight of the evidence currently of record.

In this case, the claimant has appealed an unfavorable decision to the Appeals Council as a necessary step in exhausting administrative remedies.  The Appeals Council has considered claimant's additional evidence in light of the issues raised in the request for review, has considered the applicable statutes and regulations, has considered the ALJ's decision, and has issued a written final decision determining that the ALJ neither erred nor abused his discretion, and determining that the ALJ's findings are supported by substantial evidence.  The Appeals Council's determination is subject to judicial review.  The Commissioner's regulation defining the term "final decision of the Commissioner of Social Security" in 42 U.S.C. § 405 (g) as the decision of the ALJ, and by calling the Appeals Council's final decision a "denial of review," does not have the effect of avoiding judicial review of the Appeals Council's decisions.  *See Sims*, 120 S.Ct. at 2086;  *accord Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (Appeals Council's denial of review was a judicially reviewable final decision under 42 U.S.C. § 405 (g)).

## IV.    <u>THE LAW</u>

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416 (i), 423 (d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

A.     **Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v.* Callahan, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);  *Sabo v. Commissioner of Social Security*,  955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527 (d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.)

-10-

length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527 (e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner.  20 C.F.R. § 404.1527 (e).

## B.   <u>Developing the Record</u>

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at

735 - 36.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Heath v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Cowart*, 662 F.2d at 735 (citations omitted).

### C.      Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

### D.      The Five Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520 (b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does

-12-

not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520 (c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520 (d). Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520 (e). Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled. 20 C.F.R. § 404.1520 (f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423 (d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See id.*, 985 F.2d at 534.

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416 (i)(3); 423(a), (c). If a claimant becomes disabled after the claimant has lost insured status, his or her claim for disability benefits must be denied despite the disability.

*See, e. g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

### E.   **Other Work**

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are

alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert).  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  *Foote*, 67 F.3d at 1559.

### 1.    Pain

Pain is a non-exertional impairment.  *Foote*, 67 F.3d at 1559; 826 F.2d at 1003.  Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423 (d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423 (d)(5)(A).

### 2.   Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

-16-

## V.   **APPLICATION AND ANALYSIS**

### A.   **The Facts**

Born on March 29, 1960, Heath was forty-three years old at the time of the ALJ's decision.[2] R. 56.  Heath has a seventh-grade education, and her past relevant work experience includes work as a machine operator and an egg grader.  R. 102, 244-46.  Heath claims an inability to work beginning March 2, 2000.  R. 56.

On February 17, 2000, Heath went to Robert E. Thomas, Jr., P.A.-C, after suffering a work-related injury to her right arm.[3]  The diagnosis was right wrist sprain.  Thomas advised Heath to avoid excessive use of her right arm, and noted that she could return to light duty work.  R. 112, 122.  On February 18, 2004, radiological scans of the right forearm and wrist showed no evidence of acute fracture or dislocation.  R. 111.  Heath returned to Thomas on February 24, 2000, for complaints of paresthesias in the radial aspect of the right hand.  She was wearing a wrist splint.  Examination revealed full range of motion.  The impression was contusion/sprain of the right wrist.  Thomas noted that Heath could return to modified duty work but should avoid excessive use of her right hand.  R. 109-10.

On March 29, 2000, Heath went to Thomas L. Greene, M.D., for complaints of tingling in her right hand that was increasing in frequency.  Heath stated that she continued to work and wore a brace on her right wrist.  Examination of the right upper extremity demonstrated full range of motion of the elbow without pain.  The right wrist had no evident deformity, but Heath did experience pain

---

[2]She is now forty-five years old.

[3]Heath is left-hand dominant.  R. 258.

with motion.  There was a negative Tinel's sign over the wrist and elbow.  Phalen's test and carpal tunnel compression test at the wrist produced tingling.  The impression was probable carpal tunnel syndrome (right) and arthrosis of the CMC joint (right thumb).  Dr. Greene recommended electro-diagnostic studies and stated that Heath could continue to work while wearing the splint.  R. 121-23. On April 12, 2000, EMG and nerve conduction studies were normal.  R. 120

On May 1, 2000, Heath returned to Dr. Greene with complaints of pain in the wrist, arm, and back, and tingling about her right shoulder blade.  Heath stated that her pain increased with work and while wearing the splint.  Examination revealed full range of motion of the elbow, wrist, and hand. Tinel's sign was negative.  The impression was undetermined etiology.  Dr. Greene advised Heath to discontinue the splint, resume normal activities, and released Heath to full duty work without restrictions.  R. 119-20.

On May 10, 2000, Heath returned to Dr. Greene for complaints of continuing wrist pain.  She stated that she had not returned to work.  Examination revealed full range of motion of the digits.  The impression was undetermined etiology.  Dr. Greene released Heath to full time work with temporary restrictions of no lifting over two pounds with the right hand, and no forceful gripping, pushing, pulling or twisting with the right hand.  R. 117-18.  Heath underwent an MRI of the right wrist on May 23, 2000.  The findings showed no edema or ligamentous disruption.  The impression was negative. R. 116.  On May 23, 2000, Heath returned to Dr. Greene for wrist and hand pain.  A bone imaging study revealed increased flow and blood pool in the right forearm and wrist consistent with reflex sympathetic dystrophy ["RSD"].  R. 115.

On May 30, 2000, Heath went to M. Ellen Beatty, M.D., for a second opinion regarding her wrist pain. Examination showed positive Phalen's and Tinel's at the right wrist and a positive Finkelstein. There was swelling on the dorsal wrist, and she was tender at the wrist's dorsal compartment and the lateral and medial epicondyles. Dr. Beatty opined that Heath could work, but should not use her right arm and hand to lift, grip, or engage in repetitive activity. However, Heath could use her dominant left hand for such activities. The diagnosis was rule out RSD, right deQuervain's, mild right carpal tunnel syndrome, and right lateral epicondylitis. R. 149-50.

On June 20, 2000, Heath went to Jodi Shields, M.D., for burning or tingling in the first three fingers of the right hand and pain-induced sleeplessness. Heath also stated that her arm brace aggravated her arm. Examination showed weakness of grip strength and hand intrinsics, APBs and wrist movement, mostly due to pain. She had tenderness over the medial and lateral epicondyles as well as positive Tinel's at the elbow and the wrist. Heath had full range of motion of the elbow, wrist, and fingers. The assessment was probable RSD. Dr. Shields noted that it appeared that Heath did have carpal tunnel syndrome, and speculated that it may have been too early in the course to be revealed in the EMG. Treatment comprised medication and physical therapy. R. 143-44.

On July 21, 2000, Heath returned to Dr. Shields. Dr. Shields noted that Heath was doing somewhat better and "definitely" appeared more comfortable compared to her previous visit. Heath reported feeling better while wearing an Ace bandage. Examination was unchanged, showing negative Tinel's and Phalen's signs. Heath had dysesthesia in the right hand, and a bone scan was positive for RSD. The assessment was probable RSD. Treatment comprised medication and an Ace bandage.

Dr. Shields released Heath to work with restrictions of no repetitive use of the right upper extremity and no lifting in the right upper extremity.  R. 133, 136.

Heath underwent an EMG/NCV study of the right upper extremity on August 21, 2000.  The result was normal.  R. 134-35.  On September 19, 2000, Heath returned to Dr. Shields and stated that her medications were not providing relief.  Examination showed no obvious signs of RSD, although bone scan findings were consistent with such a diagnosis.  Heath had positive Tinel's sign and negative Phalen's sign.  The assessment was questionable carpal tunnel syndrome, not EMG proven.  Dr. Shields returned Heath to work with restrictions of no repetitive use of the right upper extremity and a ten-pound maximum lift of the left upper extremity.  R. 131.

On October 3, 2000, Heath returned to Dr. Beatty and reported that her RSD had been confirmed.  Dr. Beatty specifically ruled out surgery, noting that it posed a huge risk to worsen her RSD and would not provide sufficient pain relief to warrant such risk.  The diagnosis was RSD, right deQuervain's, right carpal tunnel syndrome, and right lateral epicondylitis.  Dr. Beatty advised injections if Heath had continued intolerance to medication.  Dr. Beatty released Heath to work with restrictions of a ten-pound maximum lift and decreased repetitive use of the right arm.  Dr. Beatty released Heath from her care and referred her back to Dr. Shields.  R. 130.

On May 15, 2001, Heath was admitted to the hospital for low back pain after being involved in a car accident.  Examination showed full range of motion of all four extremities, and moderate pain to palpation of her low back over the sacrum.  Radiological exams of the cervical and lumbar spine, chest, pelvis, head, and abdomen were negative.  A CT scan of the pelvis, however, showed a right

non-displaced sacral fracture.   The assessment was right sacral fracture without displacement.
Treatment comprised crutches and pain control.  R. 152-53, 163-66.

On May 21, 2001, Heath went to Donald E. Pearson, M.D., for complaints of back soreness.
Examination revealed good range of motion of the cervical spine without tenderness, hematoma of the
right thigh, and tenderness in all areas to palpation around the buttocks and the lumbosacral area.  The
impression was fracture of the sacrum. R. 178.  On May 29, 2001, Heath returned to Dr. Pearson
reporting sacral pain.  X-rays of the sacram were satisfactory.  Dr. Pearson noted that Heath's prior CT
of the sacram showed a minimally displaced fracture at the lateral aspect of the sacrum.  R. 178.

On May 30, 2001, Heath went to Francisco E. Rosillo, M.D., for a consultative exam.  Heath
arrived in a wheelchair.[4]  She complained of wrist pain and constant lower back pain.  Heath had
tenderness on the right carpal region with positive Tinel's and Phalen's signs, with normal range of
motion.  Her range of motion of her cervical spine was limited to 20 degrees flexion (compared to 45
degrees normal), and she had reduced range of motion of the right shoulder and elbow.   She had full
range of motion of all other joints.  Dr. Rosillo could not evaluate her back, gait, or station because
Heath could not stand up from the wheelchair.  Motor strength of both hands was Grade 5.  Heath had
grade 2/5 of the right lower extremity and Grade 5 of the left.  She had impaired dexterity of the right
hand.  Her right hand grip strength was 1/5, and left hand was 5/5.  The diagnosis was carpal tunnel
syndrome of the right hand and pain of the lower lumbar spine and the sacrococcygeal region.
Regarding functional ability, Dr. Rosillo opined that due to tendonitis of the right carpal region, Heath
would have difficulty doing any type of work requiring use of both arms.  He also stated that due to

---

[4]At the administrative hearing, Heath conceded that no physician had prescribed the wheelchair and that she used
it voluntarily.  R. 246-47.

her car accident, she would not be able to walk any distance, stand up, bend, or climb stairs.  R. 179-84.

On June 22, 2001, Heath went to Richard Smith, M.D., for complaints of right hip and pelvis pain.  She reported numbness and tingling.  R. 192.  There was tenderness on palpation on the right sciatic notch region, as well as to the right greater trochanteric area.  Muscle strength was 3/5.  The diagnosis was back pain/lumbago, closed fracture of the sacrum/coccyx and contusion of the hip.  Dr. Smith advised conservative treatment including medication and physical therapy, and placed her on no-work status.  R. 193-94.

On July 3, 2001, state agency physician M. de la Cerna, M.D., completed a physical Residual Functional Capacity Assessment.  He determined that Heath could lift/carry 20 pounds occasionally, 10 pounds frequently, sit, stand, or walk for 6 hours, was limited in the upper extremities concerning lifting ability, could occasionally climb ramp, stairs, ladder, ropes or scaffolds, was limited in her handling (gross manipulation) and fingering (fine manipulation) of the right hand, and was advised to avoid hazards such as machinery and heights.  Heath had no limitations in all other respects.  Dr. de la Cerna noted that Heath's symptoms were consistent and credible.  R. 201.  The doctor further noted that she was currently unable to perform substantial gainful activity, although he was unsure if the symptoms would last twelve months.  R. 196-202.

By July 16, 2001, Heath reported good response to physical therapy regarding her back pain. She stated a 50% improvement in duration and intensity with greater range of motion.  Heath's therapist noted slow but steady progress, and advised her to wear a lumbosacral brace.  R. 204.  On July 18, 2001, Heath returned to Dr. Smith and reported minimal lower back pain, but significant pain

-22-

radiating down her right leg with numbness and tingling.  The diagnoses were back pain, sacrum closed fracture, and hip contusion.  R. 190-91.

Heath underwent an MRI of the lumbar spine on August 1, 2001.  The impression was sacral fracture with no disc herniation.  R. 205-06.  On August 17, 2001, Heath returned to Dr. Smith, who reviewed the MRI of August 1, 2001.  Dr. Smith noted that the MRI revealed a cortical defect in the sacral area, as well as disc herniations.  R. 188-89.

On October 12, 2001, Heath returned to Dr. Smith for lower back pain.  Dr. Smith noted that she had been treated conservatively for a "simple" fracture and had done relatively well.  Heath noted that her pain was much improved.  Examination of the back showed slightly limited range of motion.  The diagnosis was pain in the spine and back, lumbago and fracture of the sacrum/coccyx.  Dr. Smith noted that Heath had made good progress with conservative treatment, and he recommended that she continue her treatment and increase her activities.  Dr. Smith released Heath to work with no restrictions.  R. 185-86.

On October 12, 2001, state agency physician Gloria B. Hankins, M.D., completed a physical Residual Functional Capacity Assessment.  Dr. Hankins determined that Heath could lift/carry 20 pounds occasionally, 10 pounds frequently, sit, stand, or walk for 6 hours, was unlimited in pushing/pulling ability, could occasionally climb ramp, stairs, ladder, ropes or scaffolds, and was limited in her handling (gross manipulation) and fingering (fine manipulation) of the right hand.  Heath had no limitations in all other respects.  R. 207-14.

On December 19, 2001, Heath went to Christian A. Kovats, D.O., for complaints of chronic low back pain with radiation into the leg.  Upon examination, there was point tenderness

-23-

over the SI joint. The impression included chronic pain syndrome and diffuse DJD.  R. 215.

The record contains an undated Medical Source Statement of Ability to Do Work-Related Activities completed by Dr. Valencia (degrees and board certifications unknown).  The physician noted that from May 23, 2003 and continuing indefinitely, Heath could lift/carry less than 10 pounds, occasionally and frequently, and could stand/walk for at least 2 hours.  R. 235.

### B.    The Analysis

### 1.    The ALJ Properly Accorded Weight Among Heath's Physicians

Heath contends that the ALJ erred by giving more weight to the opinions of two state agency physicians than to the opinions of a consultative, one-time examining physician, Dr. Rosillo.  Heath is wrong.  The ALJ properly discredited Dr. Rosillo's opinions, as they were not supported by objective medical evidence.

The evidence shows that Heath had mild impairments of her right hand and wrist.  In February 2000, Heath suffered a work-related injury to her non-dominant right hand.  From February 2000 through October 2000, Heath received treatment for wrist pain on at least thirteen occasions.  Heath was treated by three treating physicians (Drs. Greene, Beatty, and Shields).  All of these physicians consistently diagnosed Heath with questionable-to-mild carpal tunnel syndrome and questionable RSD. Heath's treating physicians found a full range of motion of the wrist and hand.  Heath received only conservative treatment — medication and a wrist splint — and surgery was ruled out.  Heath's treating physicians consistently determined that Heath could return to work, but with restrictions on lifting and repetitive use of the right hand.  Moreover, diagnostic testing also confirmed that Heath's impairments were mild.  Radiological scans in February 2000 showed no fracture or dislocation,

-24-

EMG/nerve conduction studies in April 2000 were normal, an MRI in May 2000 was normal, and a second EMG/nerve conduction study in August 2000 was normal.

From October 2000 through May 2003 (the most recent medical evidence in the record), the record reflects no significant complaints of, or treatment for, hand-related symptoms. In fact, during this 31-month period, the relevant medical evidence comprises just three consultative opinions, from Dr. Rosillo (May 2001) and from two state agency physicians, Dr. de la Cerna (July 2001) and Dr. Hankins (October 2001). The state agency physicians' findings were substantially consistent with those of Heath's treating physicians and diagnostic evidence.[5] Both state agency physicians determined that Heath could perform light work, but had limitations in gross/fine manipulation of the right hand. Dr. Rosillo, a one-time examining source, however, determined that Heath had far greater functional limitations. He opined that due to tendonitis of the right carpal region, Heath would have difficulty doing any type of work requiring use of both arms.

The ALJ rejected Dr. Rosillo's opinions as to Heath's hand limitations, and instead, accorded controlling weight to the state agency physicians' opinions, which the ALJ found to be consistent with the diagnostic and clinical impressions from a longitudinal perspective. The Court agrees. The evidence supports the ALJ's decision to accord greater weight to the opinions of the state agency physicians rather than to the opinion of Dr. Rosillo.

Heath next contends that the ALJ erroneously rejected Dr. Rosillo's opinions regarding Heath's impairments related to her back and sacral pain. But the evidence shows only minimal functional

---

[5]Regarding Heath's lifting ability, the state agency physicians' opinions were slightly more generous than the opinions of treating physicians Drs. Beatty and Shields. The state agency physicians found that Heath could occasionally lift 20 pounds, but the treating physicians advised that as of October 2000, Heath should lift a maximum of 10 pounds. However, the evidence after October 2000 shows improvement and supports the state agency physicians' assessment. Indeed, by October 2001, Heath was released to work without any restrictions.

limitations as a result of Heath's impairments, and therefore, does not support Dr. Rosillo's findings. On or about May 15, 2001, Heath was involved in a motor vehicle accident and sustained a minimally displaced fracture of the sacrum. Immediately following the accident, Heath had a full range of motion of all four extremities, moderate pain upon palpitation of the sacrum. X-rays showed no abnormalities of the cervical or lumbar spine. From May 2001 through May 2003, Heath received conservative treatment, including medication and physical therapy and showed constant, albeit slow, improvement.

In July 2001, a state agency physician opined that Heath could perform light work and climb occasionally. Later that month, Heath reported improvement from physical therapy, and she had increased by 50% the duration and frequency of her exercise with greater range of motion. By October 2001, Dr. Smith, a treating physician, noted that Heath had been receiving treatment "on a conservative basis for a simple fracture and has done relatively well." Noting that her pain was much improved, he advised that she increase her activities as tolerated and return to work with no restrictions. Later that month, another state agency physician determined that Heath could perform light work and climb occasionally.

In contrast, Dr. Rosillo found far greater functional limitations. He performed a one-time consultative examination of Heath just two weeks after her accident. Heath arrived for the examination in a wheelchair, which she later conceded was never prescribed by a physician. Due to her being wheelchair-bound, Dr. Rosillo was unable to evaluate her back, gait, or station. He concluded that Heath would have difficulty walking any distance, standing, bending, or climbing stairs.

The ALJ understandably rejected Dr. Rosillo's opinions as "snap-shot assessment[s]" made very soon after the accident which did not reflect Heath's subsequent recovery. The ALJ also found

-26-

Dr. Rosillo's impressions to be of little value because Dr. Rosillo could not evaluate Heath's back. The ALJ properly discredited Dr. Rosillo's opinions, and gave proper weight to the state agency physicians, which accurately reflected Heath's limitations throughout the longitudinal period.

### 2.   Substantial Evidence Supported the Hypothetical Questions

Heath contends that the ALJ failed to include in her hypothetical the full extent of Heath's limitations.  The ALJ asked the VE to assume:

> [t]hat the individual could lift 20 pounds occasionally and 10 pounds frequently, could sit for six hours in an eight-hour day, could stand and walk for six hours out of an eight-hour day and is to only occasionally climb stairs and is limited to occasional use of the right hand for handling, which is gross manipulation, and fingering fine manipulations . . . .

R. 261-62.  The ALJ derived these limitations from the state agency physicians' opinions which are supported by substantial evidence.  The VE responded that the individual could perform other work that existed in the national economy.

Heath asserts that the ALJ failed to include the limitations that Heath testified to at the administrative hearing.  Specifically, Heath testified that she can walk for only 10 minutes, sit for 20-25 minutes, has to lay down most of the day, uses hot/cold presses on her back throughout the day, her knee gives out if she stands for extended periods, and has to alternate between lying down and getting up every two hours.  Such allegations of profound pain are meritless, and the ALJ is not required to include limitations that are unsupported by the record.  Substantial evidence supported the ALJ's hypothetical question.

Finally, Heath argues that the ALJ failed to evaluate Heath's pain.  As demonstrated above, the medical and other evidence shows no medical impairment which could reasonably be expected to

produce the pain or symptoms alleged.  Therefore, the ALJ properly evaluated Heath's pain and her

decision was supported by substantial evidence.

### 3.    Consultative Examination and Impairments in Combination

Heath also argues that the ALJ failed to develop the record by not ordering a consultative

examination regarding Heath's knee impairments, and further contends that the ALJ did not consider

Heath's impairments in combination.  Both arguments are meritless.  The record contains sufficient

evidence regarding Heath's knee impairments for the ALJ to render her decision.  In fact, the record

reflects no treatment for knee symptoms.  Heath's allegations of disabling knee pain are no more than

a convenient afterthought.  Heath bears the ultimate burden of proving disability, and failed to furnish

medical and other evidence sufficient to show functional limitations due to knee impairments.  In

addition, the ALJ plainly considered Heath's impairments in combination.  The ALJ determined that

Heath had severe impairments, including mild right carpal tunnel syndrome with chronic pain

syndrome and status motor vehicle accident with sacral fracture.  The ALJ properly considered the

evidence, and at the hearing, inquired about all of Heath's alleged impairments.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner is

**AFFIRMED**.

**DONE and ORDERED** this 23rd day of June, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of ther Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Mary Ann Sloan, Chief Counsel
Dennis R.  Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL              33602

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL             32817